FISHER *v.* TEXARKANA FOREST PARK PAVING DISTRICT No. 3.

Opinion delivered March 31, 1930.

*James D. Shaver* and *James D. Head,* for appellant. *Gustavus G. Pope,* for appellee.

SMITH, J. This appeal is from an order and judgment of the Miller Circuit Court establishing a rural paving improvement district adjacent to the city of Texark-

ana under the provisions of Act 126 of the Acts of 1923 (Acts 1923, page 84), and the amendments thereto.

The following findings of fact were made by the circuit court:

(1) That the last county assessment, by which the question of a majority in value of the property owners should be determined, is the assessment made by the county assessor of Miller County in 1927, as amended by the additional assessment made of Forest Park Addition by said assessor in September, 1928.

(2) "That in September, 1928, Joseph Eldridge, then the owner thereof, voluntarily went to the county assessor of Miller County, and assessed the lands forming what is known as Forest Park Addition, which said addition was platted in June, 1928, and filed with the circuit clerk, and which addition lies within said district, at the sum of twenty-five thousand ($25,000) dollars, which sum was in excess of the then market value of said lands, but that said assessment, having been made by the assessor, is binding on the court, and that the court cannot look to anything except to the assessment made by the county assessor."

(6) "The court finds that it is conceded by counsel for both sides that, without the additional assessment made by Joseph Eldridge of Forest Park Addition in September, 1928, a majority in value is with the remonstrants; and that including in the 1927 assessment the Forest Park Addition as made in September, 1928, by Joseph Eldridge, it is conceded that the petitioners have a majority in value in the district as petitioned for."

The finding of the court in regard to values is not questioned, and it is also conceded that, inasmuch as Forest Park Addition was platted into lots after the regular assessment had been made in 1927, §§ 7482 and 9918, C. & M. Digest, conferred authority to assess this property as lots in 1928, instead of as acreage property as had been done on the original assessment.

The section of the Digest first referred to provides that the circuit clerk shall certify to the county clerk, when any map or plat of any addition to any city or town has been filed in his office, the name of said addition and the date of the filing of the plat.

Section 9918, C. & M. Digest, provides that each assessor shall, at the time of taking the list of personal property, also take a list of all real property situated in his county that shall have become subject to taxation since the last previous listing of property therein.

It is also conceded that, had this supplemental assessment been made as the law contemplated it should have been made, it was the assessment of values which would have been used in determining whether or not a majority in value of the property owners had petitioned for the formation of the district.

It was held in the case of *Stevens* v. *Shull*, 178 Ark. 269, 10 S. W. (2d) 511, (to quote the syllabus): "Acts 1921, No. 395, p. 416, as amended by Acts 1925, No. 184, p. 548, providing that no single improvement shall be undertaken within paving improvement districts which shall exceed in cost 50 per cent. of the value of the real property therein as shown by the last county assessment, *held* to mean the assessment in force at the time the acts required to be done are performed, and not the assessment in force at the time the petition for such improvement was presented."

We think, however, that the supplemental assessment of the lots in the Forest Park Addition has been so far impeached that it cannot be used as the basis for determining whether a majority in value of the property owners petitioned for the creation of the district. The testimony clearly establishes the following facts. Eldridge, the promoter of the district, purchased in the early part of 1928 a forty-acre tract of land, which was then assessed at $1,300, and it was a portion of this land which was platted as the Forest Park Addition. The owner conceived the idea that the salability of these lots

would be increased if a paved road were constructed connecting the lots with the pavement in the city of Texarkana, and to that end the paving district here in question was petitioned for. The petition, as filed with the county clerk, did not contain the signatures of a majority in value of the owners of property in the district under the 1927 assessment, and the 1928 assessment was then made. The county assessor testified that he did not assess the value of the lots in the Forest Park Addition, but that he allowed Eldridge to fix the values, as he placed them far in excess of their actual market value. The result of this assessment was to increase the assessed value of Eldridge's property in the district to $25,000, and to give the petitioners for the improvement a majority in value according to that assessment. Eldridge frankly admitted that he had the lots adjacent to the road assessed at $800, and that their actual market value could not have exceeded $150 to $250 per lot. It was further shown that in 1929 Eldridge sought to assess these $800 lots at $10 each, saying that at the time he made the 1928 assessment he had a project to put over, which had been accomplished, and that he then desired to assess the lots at their true value of $10 per lot.

The circuit judge was of the opinion that, as the 1928 assessment referred to was the then outstanding assessment against the property in the district, it was the basis under the statute for the determination of the question of value, and that as a majority in value according to this assessment had petitioned for the district, he was required under the law to make an order establishing the district, thereby reversing the order of the county judge, who had denied the prayer of the petition.

We do not concur in the view of the learned circuit judge, for the reason that the 1928 assessment of the lots was fraudulent, and did not represent that fair assessment of values which the statute contemplated would be made by the county assessor for the usual taxation purposes which the improvement district statute pro-

vides shall be the basis for determining values. On the contrary, the undisputed testimony is that in making this assessment the county assessor had abdicated the function of his office and permitted Eldridge, for his own purposes, to place against the lots assessed a valuation far in excess of their market value, whereas it is a matter of common knowledge that the usual basis of assessment is 50 per cent. of the market value, and that in many cases even this value is not assessed.

The last preceding valid assessment was therefore that of 1927, in so far as this proceeding is concerned, and as it is conceded that the petition for the improvement does not contain a majority in value of the property owners according to the 1927 assessment, the judgment of the circuit court establishing the district must be reversed, and the petition will be dismissed. It is so ordered.